[Civ. No. 16659. Second Dist., Div. Three. May 17, 1949.]

MYRTLE G. McNEIL et al., Respondents, v. GEORGE V. GRANER, Appellant.

R. G. Akers for Appellant.

John E. Sisson, Edward J. Cotter and John A. Weyl for Respondents.

SHINN, P. J.—Plaintiffs brought this action alleging themselves to be the owners and holders severally of participating interests in the production from four certain oil wells designated as wells Nos. 6, 7, 8 and 9 which are and for some years have been operated by defendant George V. Graner. For convenience we shall refer to the several interests in production as "units." It was alleged that plaintiffs are entitled to receive their several percentages of production less stated percentages of taxes and expenses of operating and maintaining the wells, that defendant has made false and excessive deductions on account of taxes and the cost of maintenance and operation and has failed to render true accountings to the plaintiffs and to pay them the full sums due according to their respective interests.

Plaintiffs recovered judgment. A part of the recovery was based upon the commingling of oil from the several wells and the failure to correctly account to plaintiffs for their respective shares. The appeal was not taken from this portion of the judgment. The plaintiffs were given judgment in several amounts which totaled something over $25,000, and which the court found had been deducted by defendant as cost of operation and maintenance of wells Nos. 7 and 9, in excess of the amounts properly deductible under the terms of the participating agreements. Defendant appeals from these portions of the judgment.

The assignments were issued by defendant's predecessor to finance the drilling of the wells. It was alleged by plaintiffs, and admitted, that a controversy exists with respect to the provisions under which the units are chargeable with portions of the cost of operation and management. The judgment included a declaration as to the meaning of such provisions, as affecting wells 7 and 9, and the money judgment resulted from the construction which the court placed upon them. Defendant also appeals from these declaratory provisions of the judgment.

 The assignments of production from well No. 9, so far as material, read as follows: ''The assignor agrees that he is the owner and holder of said interest hereby conveyed; that the said oil and gas lease is in full force and effect, and that he has not heretofore sold, assigned or conveyed this royalty interest or any portion thereof; that the royalty interest hereby assigned is free and clear of any drilling expense, but shall be subject to its pro rata share of the mineral rights tax, and the deduction and payment (out of the proceeds) of the sum of Eight ($8.00) Dollars per month, for each one (1%) per cent hereby assigned, for operating and maintenance charges, plus its proportion of the cost of dehydration.'' The court interpreted this assignment to mean that each 1 per cent interest in production was chargeable only with one-eightieth of the total cost of operation and maintenance, not to exceed $8.00 per month. This was the construction contended for by plaintiffs. It is conceded that the total cost of operation and maintenance is chargeable against 80 per cent of the production, the remaining 20 per cent bearing no part of the expense. Defendant has been deducting $8.00 per month from each 1 per cent interest, although the proportionate share (1/80), of such cost, has been considerably less. The judgment in favor of plaintiffs, as to well No. 9, represents the difference between the sums deducted by defendant and the amounts that would have been deducted if each 1 per cent interest had been charged with only its proportionate, or one-eightieth, share of the cost. The court's interpretation was reached without the production of extrinsic evidence; each party contended that the provisions for deductions for operating and maintenance were clear and unambiguous. We think they are.

Plaintiffs argue for a construction of the agreement which is clearly untenable. They say that since the deduction of $8.00 per month was ''for operating and maintenance charges,''

the provision must be interpreted to mean that the unit holder would pay his proportionate share of the operating and maintenance expense but not to exceed $8.00 per month. There is no provision in the agreement that the unit holder will pay a proportionate share of the operating and maintenance expense and there is no reasonable basis for reading such a provision into it. The designation of the purpose of the contribution by the unit holders may not be construed as a limitation upon the amount to be contributed. Eighty per cent of the production belonged to the unit holders. Apportionment of the expense of extracting the production, namely, the drilling and possible deepening of the well, installation of pressuring equipment, maintenance and operation and apportionment of mineral taxes and dehydration costs were proper matters to be arranged by contract. By provisions which it is unnecessary to quote the unit holders were relieved of all drilling expense, but were obligated to contribute proportionately, but only out of production, to the expense of deepening the well and the installation of pressuring equipment, and there was to be a proportionate contribution to the payment of taxes and expense of dehydration. In the absence of a specific provision respecting the cost of operation and maintenance, the agreement would have been incomplete. The investors would have been uncertain as to the amount of their liability for such costs. It was necessary, therefore, to specify the item of operation and maintenance in order to fix the obligation of the unit holders at a definite proportion, or in a definite amount. The parties agreed upon, and clearly stated, the basis and the amount of the contributions to be made by the unit holders. They assumed a definite obligation to pay a fixed sum of $8.00 per unit, or a total of $640 per month, no more and no less. The operator, on the other hand, undertook to maintain and operate the wells for the benefit of the owners of production and it was his duty to give them proper management and reconditioning, at whatever cost to himself. By their agreement the parties resolved an uncertainty into a certainty. The fact that the monthly expense has been less than $8.00 per unit does not alter the contract. It proves only that the probable expense was miscalculated. The court can no more relieve the unit holders of their obligation, or modify it, than it could relieve the operator from paying the necessary expense above the amount chargeable to the unit holders. In the absence of anything in the agreement, and without extrinsic evidence tending to prove that the parties

had some understanding which was imperfectly expressed, it must be conclusively presumed that they intended exactly what they said in the agreement. Plaintiffs argue that the agreement should be given a construction that would render it reasonable, rather than one which would lead to an absurd result, and they say it is unreasonable and absurd to require them to pay $8.00 per month when their proportionate share of the expense is considerably less. But the reasonableness of an agreement must be judged as of the time when it is made. The fact that after it has been in operation for a number of years it is found to be highly advantageous to one of the parties and detrimental to the other, does not furnish a ground for disregarding its plain provisions so as to equalize the benefits. There is no uncertainty or ambiguity in the contract and it is not at all unreasonable to give it a literal interpretation. If the sum of $8.00 in any one month exceeded one-eightieth of the actual expense, defendant was entitled to retain the difference, and if the expense in any month exceeded $8.00 per unit, defendant alone would have to pay the excess. The contention of defendant is therefore correct; the deductions at the rate of $8.00 per month for each 1 per cent interest were justified under the contracts, and the judgment with respect to this issue was in error.

█ The assignment relating to production from well No. 7 reads as follows: "The Assignor agrees that the royalty interest hereby assigned is free and clear of any drilling expense, but shall be subject to its pro-rata share of the mineral rights tax, and one-eightieth (1/80) of its pro rata share of the costs of operation and maintenance, not to exceed, however, the sum of Eight ($8.00) Dollars per month for each One percent (1%) hereby assigned, plus its proportion of the costs of dehydration." The court gave a literal construction to this clause and declared that it means that each unit holder is required to pay only one-eightieth of one-eightieth of the monthly expense. Defendant has been deducting from the proceeds from well No. 7 $8.00 per month for each unit. Conceding that these deductions were unauthorized and excessive, he contends on the appeal that the court should have interpreted "one-eightieth (1/80) *of* its pro rata share of the costs of operation and maintenance" to read, "one-eightieth (1/80) *or* its pro rata share of the costs of operation and maintenance," etc. The word "of," he says, represents a typographical error; the word "or" was intended. There was no extrinsic evidence offered or received tending to show that this alleged

mistake had been made. It was not sought to reform the instrument in this particular. We are nevertheless compelled to agree with defendant on this point.

The obvious purpose of the provision was to require contributions by the investors to the cost of operation and maintenance and to protect them from liability in excess of a stated amount. The parties anticipated that the share to be borne by the unit holders might amount to or exceed $8.00 per unit, or $640 per month, and they agreed upon this sum as the maximum of their share of the expense. This limitation shows clearly what the parties had in mind. The operator was to pay all expense in excess of $640 per month. But when we assume, as the parties did when they entered into the contract, that there might be a monthly expense of $640, and then apply the formula of the plaintiffs, adopted by the court, that each unit holder would be obligated to pay only one-eightieth of one-eightieth, or one-sixty-four hundredths, and all of them together only one-eightieth, of the monthly expense, it is seen that instead of the unit holders paying $640 as the cost of the monthly operation, each one would pay but 10 cents and their total payment would amount to only $8.00. Before their liability would reach the agreed maximum of $640 the total expense of operation and maintenance of the one well in one month would have to reach the sum of $51,200.

It is not possible for us to believe that the parties understood their contract to mean what it says. The writing clearly evidences a mistake of some sort, and the only reasonable explanation is that there was an error in drafting the agreement. The provision that each 1 per cent interest in production would be "subject to its pro rata share of the mineral rights tax . . . plus its proportion of the cost of dehydration," and the use of "1/80" and "pro rata share" relative to operating and maintenance expense, strongly indicate that the parties intended that the unit holders should pay a proportionate share of the expense of production. We should, if possible, give effect to the questioned provision. Under the interpretation urged by plaintiffs, it would impose such an insignificant obligation upon the unit holders as to practically excuse them from contributing to the expense. Clearly, the parties had no such intention. The general rule which should be applied is stated in 17 Corpus Juris Secundum, page 725, as follows: "Where it is clear that a word or term has been used inadvertently, and it is clearly inconsistent with, and repugnant to, the meaning of the parties, it will be rejected altogether.

Conversely, where, by inadvertence, words are plainly omitted from a contract, they may be supplied by construction if the context indicates what they are." Mr. Williston says, volume 3, revised edition, page 1781: "The court will if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable; and if this is impossible an interpretation which gives effect to the main apparent purpose of the contract will be favored. Indeed, in giving effect to the general meaning of a writing, particular words are sometimes wholly disregarded, or supplied, or transposed. Thus, 'or' may be given the meaning of 'and,' or *vice versa*, if the remainder of the agreement shows that a reasonable person in the position of the parties would so understand it. Clerical or grammatical errors may be corrected; single or plural language may be treated as if it were the others; and other illustrations might be given of the same principle." The word "and" is often substituted for the word "or" in order to arrive at the true meaning of a statute or contract. (*Arnold* v. *Hopkins*, 203 Cal. 553, 562 [265 P. 223]; *H. Laughlin E. Corp.* v. *J. W. Leavitt & Co.*, 116 Cal.App. 197 [2 P.2d 511]; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 775 [128 P.2d 665].) If the words and figures, "one-eightieth 1/80," and the words "its pro-rata share" were used advisedly, the mistake must have been in the use of "of" where "or" was intended. Any other interpretation would render the agreement unreasonable and nullify one of its most important provisions.

Defendant should be required to restore to plaintiffs the amount of the excess of his charges for operation and maintenance on well No. 7 above their proportionate shares.

The judgment is reversed as to those portions which relate to charges and deductions that have been made by defendant for the cost of operation and maintenance of wells Nos. 7 and 9 and which declare the rights of the parties with respect thereto.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied June 6, 1949, and respondents' petition for a hearing by the Supreme Court was denied July 14, 1949. Carter, J., and Schauer, J., voted for a hearing.