Marlin D. RICHARDSON and Lisa H. Richardson, Appellants (Plaintiffs),

v.

Lynn F. HARDIN and Charolette M. Hardin, husband and wife; Robert Bole and Stanley B. Parker, d/b/a Cowboy Realty, Appellees (Defendants).

Lynn F. Hardin and Charolette M. Hardin, husband and wife, Appellants (Defendants),

v.

Marlin D. Richardson and Lisa H. Richardson, Appellees (Plaintiffs).

Nos. 99–69, 99–70.

Supreme Court of Wyoming.

May 3, 2000.

Representing the Richardsons: Virgil G. Kinnaird and Fred R. Dollison, Sheridan, Wyoming

Representing the Hardins and Bole: Laurence W. Stinson of Bormuth Freeman & Stinson, LC, Cody, Wyoming

Representing Parker: R. Scott Kath of Copenhaver, Kath & Kitchen, LLC, Powell, Wyoming

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN & HILL, JJ.

MACY, Justice.

Marlin Richardson and Lisa Richardson purchased a home from Lynn Hardin and Charolette Hardin in 1993. Robert Bole, who was employed by Stanley Parker as the sole proprietor for Cowboy Realty, was the real estate agent who listed the Hardins' home for sale. On June 20, 1996, the Richardsons filed suit, alleging that the foundation walls of the basement were defective and structurally unsound and that such condition was known and concealed by the defendants. Parker was dismissed from the lawsuit on an affidavit of noninvolvement. The remaining defendants—the Hardins and Bole—denied the allegations, and the Hardins counterclaimed for attorney's fees. The defendants subsequently moved for a summary judgment, and the Hardins also requested attorney's fees. The district court granted the defendants' motion for a summary judgment but denied the Hardins' request for attorney's fees. The Richardsons appeal from the orders which dismissed Parker on an affidavit of noninvolvement and granted a summary judgment in favor of the defendants. The Hardins appeal from that portion of the

summary judgment which denied their request for attorney's fees.

We affirm.

## ISSUES

The Richardsons present two issues for our consideration:

A.  The Court erred in dismissal of Defendant Stanley B. Parker on an affidavit of noninvolvement.

B.  The Court erred in granting summary judgment to Defendants Hardin and Bole.

The Hardins request our review of the following issues:

A.  Whether Plaintiffs breached a contract for real estate by refusing to accept the property "as is, where is" and by relying on Defendants' representations, all in contravention to the terms of the contract.

B.  Whether a suit for fraud relative to a contract to buy real estate revives the entire document or only those provisions alleged to be fraudulent.

C.  Whether the attorney's-fees clause contained within a buy/sell contract, which clause provides recovery of attorney's fees to the prevailing party, survives delivery of the deed and is not subject to the doctrine of merger.

D.  Whether the lower court erred in declining to award attorney's fees to Defendants Lynn and Charolette Hardin, when Plaintiffs' case was lost on summary judgment.

## FACTS

The Hardins bought their home from Builder Dave Showell in 1981.  In 1992, when employment opportunities required them to relocate, they listed their home for sale with Bole. Bole was the Hardins' neighbor and was also an associate broker and realtor for Cowboy Realty.

The basement walls of the home were built with unfinished cinder block, and, as the Hardins were moving into the home, they noticed that the southwest wall had buckled at chest height.  The Hardins had Showell fix it, and they did not experience any more problems with the wall after the repair.  Although the Hardins originally planned to paint the basement walls and caulked some hairline cracks in preparation to do so, they ended up paneling the basement with tongue-and-groove rustic wood instead.  The paneling was affixed to a wooden 2" × 4" frame placed against the cinder block walls.  Because the top of the cinder block wall slightly tilted inward, the frame was not plumb against the wall, and the bottom of the 2" × 4" wall was approximately two or two and one-half inches from the cinder block wall.  When Mr. Hardin asked Showell about this condition, Showell explained that this was the way it was built and that it was not indicative of movement.  Once the paneling project was complete in approximately 1984, the paneling remained in place until the Richardsons removed it approximately ten years later.

Although Bole was the Hardins' neighbor and considered the Hardins to be friends, he had never been in the basement of their home.  He was, however, aware that, more than ten years earlier, the Hardins had experienced a settling problem.  When he inquired about whether the Hardins had experienced any more problems with the basement after the repair of the wall, they responded that they had not.  In preparing to list the house, Bole conducted a walk-through to measure its square footage and to get an idea about the features of the home.  He also gave the Hardins a property condition statement to complete.

In the meantime, the Richardsons were planning a move from Jackson to Cody and were looking for a home large enough to accommodate their family.  They also hoped to find a home located where they could keep horses.  Mrs. Richardson viewed the Hardins' home on two occasions.  Mrs. Hardin was home on both occasions.  At neither time did Mrs. Hardin make any statements which influenced Mrs. Richardson's decision to purchase the home.

Homes were in short supply, and Mrs. Richardson offered to purchase the home for the asking price of $107,000 on May 26, 1993, before her husband had the opportunity to see the home.  The Hardins accepted the offer on May 27, 1993, creating an Offer,

Acceptance and Receipt Specific Performance Contract (buy/sell contract). The Hardins signed and returned the Richardsons' offer along with the property condition statement which had not been seen by the Richardsons before this time.

The buy/sell contract is a form which contains language advising buyers that they are accepting the house "as is, where is" without any reliance upon any representations of the sellers. It further informs the buyers that it is a legally binding document and that the buyers might, therefore, want to consult with legal counsel before signing. Mrs. Richardson testified that she read and understood the contract before she signed it. The Richardsons were also aware that they had a right to inspect the property prior to closing and that the right of inspection also allowed them to void the sale if the inspection netted unsatisfactory results.

After moving into the home, the Richardsons discovered foundation defects. They hired a civil engineer to inspect the house and report on his findings. The engineer reported that the foundation had failed and the failure would continue to degrade, ultimately to the point of collapse. The engineer attributed the problem to the presence of expansive clays around the exterior of the basement foundation. He also noted that the basement floor was severely buckled, indicating the presence of expansive clays under the floor as well. He reported that he did not see any possibility of being able to repair the foundation and believed the only option was to remove the home from the foundation, reconstruct a completely new foundation designed for the soil conditions, and reset the home. He was concerned that the problems were known to the previous home owners because he had found some caulking in the cracks behind the paneling.

The Richardsons assert that they did not have the property inspected because, after the buy/sell contract was formed, Mrs. Richardson asked Mrs. Hardin about whether she had ever had any problems with the home. The Richardsons claim that Mrs. Hardin answered that she had never had any problems with the home and that she was sad to leave it. The Richardsons insist that they were

defrauded by this statement because the Hardins had settling problems in 1981 which Mrs. Hardin failed to mention. The Richardsons also claim that the property condition statement misrepresented the condition of the home when the answer "no" was checked in response to the inquiry about whether concealed cracks existed in the foundation walls or floors.

The Hardins contend that, at the time the floor was carpeted and the paneling was installed, the only cracks present were normal hairline cracks expected in normal settling and that they caulked the walls because they originally intended to paint the basement. They also assert that, as required by the Property Condition Statement, they provided the present description and condition of the property as they knew it to be.

The Richardsons filed suit, alleging fraudulent misrepresentation. Parker responded by filing an affidavit of noninvolvement and was subsequently dismissed from the suit. The remaining defendants filed a motion for a summary judgment. The district court granted the defendants' motion, finding that the Richardsons "failed to meet their burden of clear, unequivocal, and convincing evidence on summary judgment." The district court also found that the Richardsons "failed to prove any reliance upon a representation in purchasing the home and further failed to prove that any misrepresentation, if any existed, was intentional." Although the district court granted the defendants' motion for a summary judgment, it denied the Hardins' request for attorney's fees, reasoning that the attorney's fees provision in the contract was "no longer valid upon delivery of the Warranty [D]eed by Hardins to Plaintiffs because such language merged into the Warranty Deed." The parties appeal to this Court.

## DISCUSSION

### A.  Summary Judgment

■ The Richardsons claim that the district court erred by granting a summary judgment in favor of the defendants, asserting that the Hardins knew about the condition of the basement walls and active-

ly concealed it. They further contend that, because Bole was the Hardins' neighbor and had experienced settling problems in his house, he also knew or should have known about the problems with the Hardins' house. The defendants counter that none of them made any representations to the Richardsons prior to their offer to purchase the house and that any representations which were made after the buy/sell contract was entered into were made on the basis of the Hardins' knowledge of the current condition of the home. They assert that, after they had the wall repaired, they were aware of only hairline cracks which occur in normal settling.

In cases alleging fraud, this Court has previously held the following regarding the burden required to defend against a motion for a summary judgment:

> [F]raud is to be established by clear, unequivocal, and convincing evidence, and it will never be presumed. These same concepts have been applied in addressing motions for summary judgment in the context of claims of fraud. Assuming the pleadings allege fraud with sufficient particularity, and the parties accused of fraud, in support of a motion for summary judgment, have presented facts that refute those allegations of fraud, the party relying upon the fraud claim then must demonstrate the existence of genuine issues of material fact by clear, unequivocal, and convincing evidence presented in opposition to the motion for summary judgment.

*McKenney v. Pacific First Federal Savings Bank of Tacoma, Washington,* 887 P.2d 927, 929 (Wyo.1994) (citations omitted).

To succeed on a claim of fraudulent misrepresentation, three elements must be established: First, the buyer must prove by clear and convincing evidence that the seller misrepresented a material fact; second, the buyer must establish that he relied upon the misrepresentations in entering into the contract and that such reliance was reasonable; and third, the buyer must demonstrate that he suffered injury as a result of his reliance upon the misrepresentation. *Schepps v. Howe,* 665 P.2d 504, 508 (Wyo.1983). With regard to the reasonable reliance element,

this Court has recognized that the false representation must occur prior to the execution of the contract which is sought to be avoided or under which damages are sought to be recovered. *Id.*

Our review of the record discloses that the representations at issue occurred after the contract had been formed. It is undisputed that the defendants did not make any representations to the Richardsons until after May 27, 1993—the date the parties executed the buy/sell contract.

We addressed a similar situation in *Schepps,* where we held that any misrepresentations made after the buy/sell contract was executed could not be the basis of actionable fraud:

> The documentation before the district court might well create a triable issue as to whether the misrepresentations which are complained of actually occurred, but this issue of fact cannot interfere with our affirmance of the district court's grant of the summary judgment. Even if such misrepresentations of fact did occur, they were made after the contract had been executed. As a matter of law such misrepresentations cannot form the basis of actionable fraud because they could not serve as an inducement to the buyers in entering into the contract. As this court said in *Schaffer v. Standard Timber Company,* 79 Wyo. 137, 331 P.2d 611, 615 (1958):
>
> > "A party preparing to consummate a contract cannot be heard to complain if he fails to make reasonably diligent inquiry regarding the facts."
>
> Any issue with respect to the misrepresentations is not material to the disposition of this case. Since the only misrepresentations that are relied upon were made subsequent to the time of the contract, any issue with respect to whether such representations were made would not be an issue of a material fact. As to this aspect of the summary judgment the district court must be affirmed.

665 P.2d at 509.

We agree with the district court that the Richardsons have failed to meet their burden of establishing by clear, unequivocal, and

convincing evidence that they relied upon false representations in entering into the buy/sell contract. In this case, as was the situation in *Schepps,* the only representations at issue were made after the formation of the contract. They, therefore, could not have served as inducement, and the issue of whether they misrepresented a material fact is of no significance.

The Richardsons argue that, because the contract gave them until June 25, 1993, to inspect the property and void the contract if the inspection revealed any defects in the property, a binding contract did not exist until that date. They did not raise this argument during the summary judgment proceeding. Instead, it was made for the first time on appeal.

█ When we review a grant of summary judgment, we examine the case in the same manner as the trial court did, and we treat the motion as if it were originally before us, using the identical materials and information that were presented to the trial court. *Pekas v. Thompson,* 903 P.2d 532, 535 (Wyo.1995). The rule is that a party on appeal " 'may only refer to the record as it existed at the time the trial court ruled, outline the arguments made at that time, and explain why the trial court erred in granting summary judgment.' " *Id.* (quoting *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.,* 226 Ill.App.3d 507, 168 Ill.Dec. 634, 589 N.E.2d 1034, 1036 (1992)). We, therefore, decline to consider this argument.

## B. Dismissal Due to Noninvolvement

█ Parker filed an affidavit of noninvolvement pursuant to Wyo. Stat. Ann. § 1–1–117(a) (LEXIS 1999) in response to the Richardsons' claims against him. The Richardsons moved the district court to deny Parker's request for dismissal. A hearing was held, and the district court granted Parker's request for dismissal. The Richardsons argue on appeal that Parker should not have been dismissed because a broker has a duty to supervise his associate brokers and that Parker's liability stems from his supervision of Bole, who allegedly knew or should have known about the condition of the walls in the basement. Our decision affirming the sum-

mary judgment in favor of Bole is dispositive of this issue, and we, therefore, will not address it.

## C. Attorney's Fees

█ The Hardins raise various issues regarding their perceived right to recover attorney's fees. They essentially claim that they are entitled to attorney's fees under the buy/sell contract. The Hardins and the Richardsons' buy/sell contract contained the following provision:

> B. In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees and other expenses which the nonbreaching or nondefaulting party may incur in enforcing this Contract with or without suit. This provision shall not limit any other remedies to which the parties may otherwise be entitled.

This executory contract was in full force and effect from May 27, 1993, until the parties closed on the property on July 26, 1993. The contract merged with the deed on July 26, 1993, and it no longer existed. In the absence of fraud, once the contract merges with the deed, the terms of the deed govern the rights and responsibilities of the parties. *40 North Corporation v. Morrell,* 964 P.2d 423, 426 (Wyo.1998); *Bakken v. Price,* 613 P.2d 1222, 1227 (Wyo.1980). "Since a contract is no longer executory but is executed upon making and delivering the deed, it is the further appropriate rule of law that, thereafter, the provisions of the contract are merged into the deed and it is the deed that controls the rights and obligations of the parties." *Bakken,* 613 P.2d at 1227. Attorney's fees can be awarded only pursuant to a contract or statute permitting them. *Del Rossi v. Doenz,* 912 P.2d 1116, 1119 (Wyo.1996). Because the contract merged with the deed, there is not a contract under which attorney's fees can be awarded.

█ The Hardins argue that the following language found in previous Wyoming cases allows the recovery of attorney's fees in actions for fraud: " '[T]he law is well settled that, in the absence of fraud, an executed

sale of real estate will not be rescinded for that cause, but in such case the purchaser must look for protection to the covenants of the deed.'" *Bakken*, 613 P.2d at 1227 (quoting *Fellows v. Evans*, 33 Or. 30, 53 P. 491, 492 (1898)). This language excepts fraud and not merely actions for fraud. Because we have held that the evidence does not show by clear, unequivocal, and convincing evidence that fraud occurred, we disagree with the Hardins' assertion that the contract was revived.

The Hardins urge this Court to adopt the collateral obligations rule rather than to hold that all the obligations contained in the contract for the sale or purchase of land merge into delivery of the warranty deed. The collateral obligations rule states that, "[i]f the promise is 'collateral' to the transaction, then it survives closing; if it is not, then it merges in the deed." Lawrence Berger, *Merger by Deed—What Provisions of a Contract for the Sale of Land Survive the Closing?*, 21 Real Estate L.J. 22, 32 (Summer 1992). We cannot, for the reasons we cited earlier in this opinion, consider this argument as it was presented for the first time on appeal.

Affirmed.