Filed 6/25/14  Mohamed v. Anatolia Units 1 et al. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JOSEPH MOHAMED, SR., | C073868 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201200117582CUBCGDS) |
| v. | |
| ANATOLIA UNITS 1, 2 AND 4 MASTER ASSOCIATION, | |
| Defendant and Respondent. | |

This action for declaratory relief, breach of contract, and unjust enrichment involves the right to use certain recreational facilities, known as The Clubhouse (or club) at Anatolia (the club), at a common interest development in Rancho Cordova known as Anatolia Units 1, 2 and 4 (Anatolia).  Plaintiff Joseph Mohamed, who owns 102 vacant lots in Anatolia, contends that the homeowners' association for the development -- defendant Anatolia Units 1, 2 and 4 Master Association (the association) -- has wrongfully refused to issue him club membership cards for each of his 102 vacant lots.

1

On demurrer, the trial court concluded that Mohamed is not entitled to membership cards for his vacant lots. On Mohamed's appeal from the judgment of dismissal, we agree. As we will explain, Mohamed *is* entitled to use the club, but he is not entitled to (nor does he need) a membership card to do so. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts from the allegations in Mohamed's first amended complaint and the attached exhibits:

In or about August 2009, Mohamed purchased 106 lots (homesites) in Anatolia. He subsequently developed four of those lots, which he uses as rental properties. The remaining 102 lots are undeveloped.

Under the master declaration of establishment of conditions, covenants and restrictions for Anatolia units 1, 2 and 4 (the CC&R's), all owners of homesites and condominiums in Anatolia are members of the club. Under the CC&Rs, the owner of a homesite is the record holder of fee simple title to the homesite. This includes merchant builders, which is anyone who has acquired property within the community to develop and sell to members of the general public.

As owner of the 102 vacant lots, Mohamed has been assessed $86 in club charges each month for each lot since he purchased them for mandatory membership in the club and for the right to use the facilities and amenities of the club. Mohamed has requested that the association issue him club membership cards for each of the 102 vacant lots he owns, but the association has refused.

As a result of this refusal, in January 2012 Mohamed commenced this action against the association. The association demurred, and the trial court sustained the demurrer with leave to amend. Thereafter, Mohamed filed his amended complaint, setting forth causes of action for declaratory relief, breach of contract, and unjust enrichment. Mohamed sought a judicial declaration that he is entitled to a membership card for each of his 102 vacant lots and as to the reasonableness of the association's

2

interpretation of the CC&R's under former Civil Code section 1354 (now Civil Code section 5975). Mohamed further claimed that the association's refusal to issue him 102 club membership cards amounted to a breach of contract and unjust enrichment.

The association demurred again, asserting that the CC&R's do not give Mohamed the right to a club membership card for each of his 102 vacant lots, and that Mohamed failed to show that the CC&R's were unreasonable. The trial court agreed, concluding that "[t]he CC&Rs do not provide for membership cards for lots owned by plaintiff unless someone is residing on the lot" and that the CC&R's were not unreasonable. Denying Mohamed further leave to amend, the court entered a judgment of dismissal in favor of the association, and Mohamed timely appealed.

DISCUSSION

This is a strange case. The gist of Mohamed's complaint is that the association is *wrongfully denying him access to the club* because the association has refused to issue him a club membership card for each of his vacant lots. The association, however, *concedes* Mohamed's right to use the club; the association simply contends that he is not entitled to a membership card for each of his vacant lots. In other words, it is the association's position that Mohamed has the right to use the club and he does not have to present a membership card to do so. Notwithstanding the association's concession that he is entitled to use the club without a membership card, Mohamed nonetheless insists that a membership card is an absolute requirement for club use under the rules and regulations for the club (the rules) and thus the association's refusal to issue him a membership card for each of his vacant lots is tantamount to refusing him access to the club.

In light of the parties' positions, the question on appeal is whether the CC&R's and/or the rules can be reasonably construed as requiring a merchant builder to have a membership card to exercise his or her right to use the club. If such a construction is reasonable, then it was error for the trial court to rule against Mohamed on demurrer.

3

(See *Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239 [in passing on the sufficiency of a complaint, a court must accept the plaintiff's construction of a written agreement as long the pleading does not place a clearly erroneous construction on the agreement].) We conclude, however, that Mohamed's construction of the CC&R's and the rules is *not* reasonable. The CC&R's say nothing about membership cards at all, and while the rules do contain provisions stating that a membership card is necessary to use the club, we agree with the association that those provisions were *not* intended to apply to merchant builders like Mohamed, who are thus entitled to use the club even without a membership card.

We begin our analysis by setting forth the governing legal principles. "The CC&R's are interpreted according to the standard canons for interpreting written instruments." (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1410.) Some of those canons are as follows: "In construing a contract the court should strive to ascertain its object as reflected in the provisions thereof; should be guided by the intention of the parties as disclosed by those provisions [citations]; should endeavor to effect the intention and object thus ascertained [citation]; should adopt that construction which will make the contract reasonable, fair and just [citations]; [and] should avoid an interpretation which will make the contract unusual, extraordinary, harsh, unjust or inequitable . . . ." (*Harris v. Klure* (1962) 205 Cal.App.2d 574, 577-578.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) While "the language of the agreement, if clear and explicit and not conducive to an absurd result, must govern its interpretation," "this does not mean that a portion only of a written instrument, although it is clear and explicit, may be selected as furnishing conclusive evidence of the intentions of the parties." (*Universal Sales Corp. v. Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 760.) "The character of a contract is not to be determined by isolating any single clause . . . ." (*Transportation Guar. Co. v. Jellins* (1946) 29

4

Cal.2d 242, 247.)  If it is impossible to give effect to all the provisions in an agreement, " 'an interpretation which gives effect to the main apparent purpose of the contract will be favored.' "  (*McNeil v. Graner* (1949) 91 Cal.App.2d 858, 864.)  Thus, "Particular clauses of a contract are subordinate to its general intent."  (Civ. Code, § 1650.)

 With these principles in mind, we turn to the relevant provisions from the CC&R's.  Under the CC&R's, the club consists of certain real property, buildings, and improvements that were to be owned by the original developer of Anatolia (Sunridge-Anatolia, LLC, referred to in the CC&R's as "Declarant") and leased to the association until acquired by the association in fee.  Section 1.1.7 of the CC&R's provides that "[m]embership in The Club and payment of Club Charges are mandatory for all Owners of Homesites and Condominiums within the Community."  Section 1.1.8 of the CC&R's provides that "Club Charges are payable monthly by Owners of Homesites and Condominiums for mandatory membership in The Club and for the right to use the facilities and amenities of The Club."  Section 2.7 of the CC&R's provides that "[a]fter the . . . Association acquires fee title to The Club and it becomes part of the Master Common Area, Declarant and the Merchant Builders shall still have the right to use of The Club facilities and services for and in connection with marketing of Homesites and Condominiums in the Community, promotion and advertising of the Community, public relations, and generally creating an interest among potential residents in becoming an Owner, and for purposes unrelated to the Community; provided, however, that such use shall not unreasonably interfere with the rights of Owners and their guests to use such facilities and to receive such services."  Finally, section 4.1.6 of the CC&R's provides that the association "shall adopt rules and regulations . . . not inconsistent with the provisions of [these CC&R's], including, but not limited to, Rules and Regulations relating to the use of the Master Common Area and of the Community."

 The foregoing provisions make clear that all owners, including merchant builders like Mohamed, are entitled to use the club in exchange for paying the mandatory monthly

club charges.  There is *no* provision in the CC&R's for membership cards.  As will be seen, there *are* provisions for membership cards in the rules governing the club, but as we have seen any rules and regulations adopted by the association must be consistent with the CC&R's.  Thus, in turning to the relevant provisions in the rules for the club, we necessarily construe them consistently with the CC&R's.

Section 1.2 of the rules specifies that "[t]he Club is intended primarily for the use and enjoyment of the people living in the single family homes in Anatolia" but also makes clear that "[t]he Declarant and homebuilders ('Merchant Builders') are also entitled to use the Club."  Immediately thereafter, section 1.2 of the rules provides that "[a]ccess to The Club shall be by Membership Card only, as provided in Section 1.8."  Section 1.8 of the rules specifies as follows:

"Membership Cards.  Access to The Club shall be by membership card ('Membership Card') issued by The Operator between the hours of 10 a.m. to 6 p.m. during certain days of the week.  Ordinarily, Membership Cards shall be issued to each member of the household who is fourteen (14) years or older . . . ."

Section 1.8.1 of the rules provides that "[m]embership cards must be presented when signing in for use of The Club Facilities."  Section 1.8.2 of the rules provides that membership cards are not transferable.  Section 1.8.3 of the rules governs lost cards.

Next, Section 1.9 of the rules provides as follows:

"Use By Declarant and Merchant Builders.  The Declarant, and the Merchant Builders owning Homesites in Anatolia, shall still have the right to use of The Club facilities and services for and in connection with marketing of Homesites and Condominiums in Anatolia, promotion and advertising of Anatolia, public relations, and generally creating an interest among potential residents in becoming an Owner, and for purposes unrelated to Anatolia.  These use rights shall not unreasonably interfere with the rights of Members and their Guests to use The Club Facilities and to receive The Club services, as determined by The Operator."

6

A few other provisions in the rules will be relevant to our analysis, and we will mention those provisions hereafter; for now, however, it is sufficient to proceed based on the foregoing rules.

If read in isolation from the rest of the rules, part of section 1.2, the first sentence in section 1.8, and all of section 1.8.1 of the rules support Mohamed's arguments here, inasmuch as those provisions provide that "[a]ccess to The Club shall be by Membership Card only," "[a]ccess to The Club shall be by membership card," and "[m]embership cards must be presented when signing in for use of The Club Facilities." Under these provisions, read by themselves, denial of a membership card *is* tantamount to denial of access to the club. As we have explained already, however, "[t]he character of a contract is not to be determined by isolating any single clause . . . ." (*Transportation Guar. Co. v. Jellins, supra,* 29 Cal.2d at p. 247.) Our task is to determine whether the rules, *read as a whole*, can reasonably be construed as requiring a merchant builder to have a membership card to exercise his or her right to use the club. As we will explain, we agree with the association that the rules cannot reasonably be read in that manner.

First of all, so far as possible, we must construe the rules consistently with the CC&R's (because the association does not have the power to adopt rules inconsistent with the CC&R's), and the CC&R's clearly and unequivocally establish the right of merchant builders like Mohamed to use the club. Any reading of the rules that would inhibit that right would render the rules inconsistent with the CC&R's. Thus, unless there is *no other possible* reading of the rules, we must construe them in a manner that facilitates the permitted use of the club by merchant builders. Such a construction *is* possible if the rules are construed to provide that membership cards are necessary only for those persons entitled to use the club who reside in homes or condominiums within Anatolia and that such cards are *not* necessary for merchant builders. As will be shown this is a reasonable construction -- indeed, the *only* reasonable construction -- of the rules consistent with the CC&R's.

7

Returning to section 1.2 of the rules, we see that immediately after acknowledging that "[t]he Declarant and homebuilders ('Merchant Builders') are also entitled to use The Club," that section provides that "[a]ccess to The Club shall be by Membership Card only, *as provided in Section 1.8.*" (Italics added.) Section 1.8 of the rules provides in pertinent part that "[o]rdinarily, Membership Cards shall be issued to each member of the household who is fourteen (14) years or older." The reference in this section to "the household" illustrates how the rules connect membership cards with *occupancy*. This connection is further developed in sections 1.3.1, 1.3.2, 1.3.3, 1.4, and 1.4.1 of the rules. These sections provide in relevant part as follows:

1) "Each Owner must submit an information sheet to The Operator, identifying the Owner(s) and the identity and relationship of the persons *living in the home with the Owner* for whom the Owner would like Membership Cards. Ordinarily, the Owner, his or her spouse, and all unmarried children *living full-time in the Homesite or Condominium*, between the ages of fourteen (14) and twenty-two (22), will be entitled to Membership Cards. If the Owner is unmarried, the Owner may designate **one** additional person *who is living with such Owner in the Homesite or Condominium* in addition to children of the Owner as an adult resident entitled to a Membership Card." (Rules, § 1.3.1, italics added.)

2) "Ordinarily, Membership Cards will be available only to the persons identified in Paragraphs [*sic*] 1.3.1. The Operator shall have the discretion, however, to issue Membership Cards to a Member's children *who live part-time with the Member* as a result of shared custody arrangements, absence during the college school year, and similar circumstances, and to adult parents and adult children over twenty-two (22) years of age of the Member or his spouse *who reside with the Member. . . . Proof of residency* may be established by a driver's license, car registration, bank statement showing the home address, university identification card, or other evidence satisfactory to The Operator." (Rules, § 1.3.2, italics added.)

8

3) "When an Owner is a corporation or partnership, the corporate or partnership Owner must complete the information sheet with the names and relationship to the corporation or partnership of the persons who are *living in the Homesite or Condominium*. The persons named on the information sheet, and *living in the Homesite or Condominium* will be deemed to be the 'family' for purposes of issuance of Membership Cards. The corporation or partnership shall update its information sheet annually, or sooner if the persons *living in the Homesite or Condominium* change." (Rules, § 1.3.3, italics added.)

4) "Any Owner may delegate his or her rights of enjoyment to The Club to the persons *occupying his or her Homesite or Condominium* under a lease (a 'Tenant') or a contract to purchase (a 'Contract Purchaser')." (Rules, § 1.4, italics added.)

5) "The Owner must provide The Operator with a copy of the written document delegating the use rights to the Tenant or Contract Purchaser; and, the Tenant or Contract Purchaser, shall submit an application identifying the Tenant or Contract Purchaser and the identity and relationship of the persons *living in the home* with the Tenant or Contract Purchaser for whom the Tenant or Contract Purchaser would like Membership Cards." (Rules, § 1.4.1, italics added.)

The foregoing provisions illustrate that, under the rules, membership cards are for persons who are entitled to use the club by virtue of their *occupancy* of homes within Anatolia. However, because the rules also expressly recognize -- consistent with the CC&R's -- the right of nonoccupant merchant builders like Mohamed to use the club (see section 1.9 of the rules, *ante*), it necessarily follows that the right of a merchant builder can be exercised *without* a membership card. Nothing in the rules precludes such use -- nothing, that is, except reading (as Mohamed does) part of section 1.2, the first sentence in section 1.8, and all of section 1.8.1 of the rules in isolation from the rest of the rules. Such a reading, however, is inconsistent with the standard canons for interpreting written instruments that we have set forth above. Accordingly, that reading is *not* reasonable,

9

and we are not bound by it in determining the sufficiency of Mohamed's complaint. Instead, like the trial court, we construe the rules as permitting merchant builders, like Mohamed, to use the club even without a membership card.

With this understanding of the rules in mind, we can readily see that Mohamed's first amended complaint fails to state a cause of action, nor could any amendment cure the defect. In his breach of contract cause of action, Mohamed alleges that by failing to issue him a membership card for each of his 102 vacant lots, the association has infringed on his contractual right to use the club. As we have shown, however, Mohamed has the right to use the club even without a membership card, so there is no infringement on his contractual rights.

In his unjust enrichment cause of action, Mohamed alleges that the association has been unjustly enriched because the association has collected club charges from Mohamed but has denied him the reciprocal benefit of club use by refusing to issue him membership cards for his vacant lots. Again, however, Mohamed is entitled to use the club *without* a membership card, so there has been no unjust enrichment.

Mohamed's cause of action for declaratory relief requires a little more discussion. To the extent that cause of action seeks "a declaration that the CC&Rs and Rules & Regulations require issuance to Mohamed of a membership card for each of his 102 undeveloped lots," the cause of action is essentially duplicative of his causes of action for breach of contract and unjust enrichment. "The declaratory relief statute should not be used for the purpose of . . . determining an issue which can be determined in the main action. The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." (*General of America Ins. Co. v. Lilly* (1968) 258 Cal.App.2d 465, 470.) In any event, even if Mohamed was entitled to a declaration of his rights from the trial court with respect to membership cards for his vacant lots, given our previous conclusion about the only reasonable construction of the CC&R's and the rules, no benefit would be served by

10

reversal and remand to the trial court for entry of a judgment declaring that Mohamed has the right to use the club without a membership card, and therefore this opinion shall serve as a declaration of rights and duties. (See *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 461.)

To the extent Mohamed's cause of action for declaratory relief sought a declaration "that the Association's application of the CC&Rs and Rules & Regulations is unreasonable pursuant to [former] Civil Code section 1354," a slightly different analysis is required, but the result is the same. Former Civil Code section 1354 (now Civil Code section 5975), which applies to common interest developments like Anatolia, provides in relevant part as follows:

"(a) The covenants and restrictions in the declaration shall be enforceable equitable servitudes, *unless unreasonable*, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both." (Italics added.)

As we understand it, Mohamed sought a judicial declaration that the CC&R's (and the rules) at issue here are "unreasonable" within the meaning of former section 1354 (and thus unenforceable) because they require Mohamed to pay club charges for his lot but do not give him any reciprocal benefit because he is denied the right of club use by the denial of any membership card. The answer to that argument is this: First, there is nothing at all unreasonable about the CC&R's because they do not mention membership cards at all. As we have explained, the CC&R's require the payment of club charges but also recognize the right of merchant builders like Mohamed to use the club. Second, even assuming arguendo that the rules (as distinct from the CC&R's) fall within the ambit of former Civil Code section 1354, there is nothing unreasonable about the rules either, because, as we have construed them, Mohamed is entitled to use the club even without a membership card. Thus, he has not been denied any reciprocal benefit for his

11

payment of club charges.  To the extent Mohamed was entitled to a judicial declaration on this point, this opinion shall serve as a declaration of rights and duties.

## DISPOSITION

The judgment is affirmed.  The association shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


            ROBIE            , J.


We concur:


      RAYE            , P. J.


      NICHOLSON      , J.