Filed 4/4/23  Faitro v. Top Surgeons CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOHN FAITRO et al., | B307742 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. BC454464) |
| TOP SURGEONS, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kenneth Freeman, Judge. Affirmed as Modified.

Kamille Dean for Defendants and Appellants Michael Omidi, M.D., and Cindy Omidi.

Mark Madison for Defendants and Appellants Almont Ambulatory Surgery Center, Inc.; Antelope Valley Surgical Center, Inc.; Beverly Hills Surgery Center, LLC; California Hospital Management & Collections, Inc.; Lap Band Specialists, LLC; New Life Surgery Center, LLC; Skin Cancer and Reconstructive Surgery Specialists of Beverly Hills; Skin Cancer and Reconstructive Surgery Specialists of Valencia; Top Surgeons, LLC; Woodlake Ambulatory Surgery Center, Inc.; and 1 800 Get Thin, LLC.

Ian Shakramy for Defendants and Appellants Surgery Center Management, LLC.

Julian Omidi, in pro. per., for Defendant and Appellant Julian Omidi.

Law Offices of John M. Walker and John M. Walker; Robertson & Associates and Alexander Robertson, IV, for Plaintiffs and Respondents.

————————————

## INTRODUCTION

In 2011, plaintiffs initiated a class action lawsuit against various defendants, including individuals and affiliated surgery centers, based on their advertising campaign for "lap band" weight loss surgeries. In 2015, the parties executed a final class action settlement agreement. Five years later, in 2020, the trial court entered judgment after granting the motion approving the class action settlement. (Code Civ. Proc., § 664.6; Cal. Rules of Court, rule 3.769(h).)[1] The court took a pending petition to compel arbitration off calendar as moot.

The defendants raise a host of alleged shortcomings with the proceedings below, including: (1) plaintiffs' breaches of the settlement agreement that undermined the propriety of the class action settlement; (2) material departures from the settlement agreement in the trial court's judgment; (3) an unreasonably high attorney fee award for class counsel; and (4) the "denial" of the petition to compel arbitration.

As a preliminary matter, we conclude only two of the defendants (Top Surgeons, LLC and Surgery Center Management, LLC) have standing to

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2

challenge the judgment, given that the judgment was not entered against the remaining defendants and they were not aggrieved by it. In addition, while Top Surgeons and Surgery Center Management generally have standing on appeal, they nevertheless lack standing to raise issues that affect class members only.

For the most part, we reject the contention that the judgment altered the terms of the parties' settlement agreement instead of mirroring them as it should have. The judgment did alter two material terms as to the financial obligation of Surgery Center Management and the timeline for payment of the settlement amount; we thus modify the judgment to reflect the terms agreed upon in the settlement agreement on those points.

To the extent the issue has not been waived, we reject the contention that the trial court failed to properly scrutinize the attorney fee award, and we find no abuse of discretion in the amount of the award.

As modified, we affirm the judgment.

The trial court's order taking the petition to compel arbitration off calendar is a nonappealable order, and we dismiss the appeal taken from that order.

## FACTUAL AND PROCEDURAL HISTORY

In 2011, plaintiffs[2] filed a class action lawsuit against 15 defendants comprised of individuals and affiliated surgical centers[3] (collectively, defendants). The operative complaint alleged violations under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), the False Advertising Law (Bus. & Prof. Code, § 17500 et seq.) and the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.), based on defendants' advertising campaign for "lap band" weight loss surgeries.

### I.    *Settlement Agreement*

In February 2015, the parties executed a final written settlement agreement and general release (settlement agreement). The settlement agreement defined the "Settling Defendant" as Top Surgeons, the "Guarantying Defendant" as Surgery Center Management, and the "Dismissed Defendants" as Surgery Center Management along with the remaining defendants. The "Settling Defendant" was to "wire to a qualified

---

[2]     The named plaintiffs were John Faitro, as an individual and as the personal representative of the Estate of Laura Lee Faitro, deceased; Arturo and Elvia Renteria, as individuals and as the personal representatives of the Estate of Ana Renteria, deceased; Bridget Sandoval; Susan Blackburn, guardian ad litem for Taylor Blackburn, a minor; Jessica Bleaman; Susan Leverett; Connie Maria Herrera; and April Moreno.

[3]     Michael, Cindy, and Julian Omidi; Top Surgeons, LLC (Top Surgeons); Surgery Center Management, LLC (Surgery Center Management); Almont Ambulatory Surgery Center, Inc.; Antelope Valley Surgical Center, Inc.; Beverly Hills Surgery Center, LLC; California Hospital Management & Collections, Inc.; Lap Band Specialists, LLC; New Life Surgery Center, LLC; Skin Cancer and Reconstructive Surgery Specialists of Beverly Hills; Skin Cancer and Reconstructive Surgery Specialists of Valencia; Woodlake Ambulatory Surgery Center, Inc.; and 1 800 Get Thin, LLC.

4

settlement fund ('QSF'), set up by a claims administrator for the benefit of the settlement class, the sum of five hundred thousand dollars ($500,000) within fifteen (15) business days of the Court granting final approval of the Settlement."  "If the Settling Defendant cannot or does not transfer payment of the Settlement Funds as set forth in this Settlement Agreement, the Guarantying Defendant will be responsible for payment of the Settlement Funds within seven (7) calendar days of receiving notice that the Settling Payment [*sic*] has not transferred the Settlement Funds as required."  "Settling Defendant and Guarantying Defendant represent and warrant that each is financially solvent at the time of entering into this Settlement Agreement."  The agreement further stated, "It is affirmed and acknowledged that the Dismissed Defendants make no monetary contribution or payment toward settlement and are not apportioned any fault in connection with the Claims and causes of action and are hereby dismissed for waivers of costs, attorneys' fees and claims for malicious prosecution."

The settlement agreement provided for the Settling Defendant to pay attorney fees and costs: "Defendants will not oppose Plaintiffs' Counsel's application to the appropriate court for attorneys' fees up to and including the amount of six hundred thousand dollars ($600,000) and expenses not to exceed fifty-two thousand dollars ($52,000).  The Parties acknowledge that the Court may award less than the amount requested but that such lesser award will not invalidate this Settlement."  The agreement also required payment for $100,000 in educational advertising, up to $75,000 in settlement administration costs, and $1,000 each for the nine class representatives.

The agreement further provided: "Once the Settlement becomes Final . . . , the Settlement Fund will be distributed within fifteen (15) days to the Class Members who timely filed claim forms . . . .  In addition, the payments

5

to the individuals identified above for their awarded class representative payments and to Plaintiffs' Counsel for their awarded attorneys' fees and costs will be made within fifteen (15) business days after the Settlement becomes Final.  Once the Settling Defendant wires the funds [to the QSF], the Action shall be dismissed with prejudice."  Moreover, "upon the Settlement becoming Final, each Class Member shall release each Defendant and their Related Parties from any Claims that were brought, or could have been brought, arising out of or relating to the facts alleged in this Action."

The agreement defined the term "Final" as follows:  "'Final' means if no objections are filed, the Settlement will become 'Final' upon final approval by the Court.  If objection(s) are filed, the Settlement will become 'Final' either (i) after the applicable date for seeking appellate review of the Court's final approval of the Settlement has passed without a timely appeal or request for review having been made; or (ii) if a timely appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petitions for writ of certiorari) resulting in the final judicial approval of the Settlement."

The settlement agreement also detailed the process for final approval, including the manner of class notice and the filing of class member objections to the proposed settlement.  The agreement provided: "Settling Defendant will select the Settlement Administrator, subject to the reasonable approval of Plaintiffs' Counsel.  The parties have agreed to the appointment of Settlement Services, Inc., an experienced administrator, to administer the claims process."

The settlement agreement included an arbitration clause providing that "any dispute, controversy, or claim arising out of or relating to this Settlement Agreement (including its meaning and effect) shall first be submitted to and decided by confidential arbitration," with the arbitrator's

6

decision subject to the court's review and approval. The settlement agreement further stated: "Each of the Parties expressly understands and agrees that this Settlement Agreement may not be amended, modified in any respect, or waived, except by a writing duly executed by each of the settling Parties or their duly authorized representatives."

## II. *Court Approval of the Settlement*

On October 15, 2015, the trial court granted plaintiffs' motion for preliminary approval of the class action settlement, which included the proposed class notice. No opposition was filed by defendants.

On January 5, 2016, plaintiffs filed a motion to enforce the settlement agreement and enter judgment pursuant to section 664.6,[4] because defendants had failed to provide a class list to the settlement administrator within 15 days of the court's preliminary approval of the settlement, as required by the settlement agreement. On April 25, 2016, the trial court granted plaintiffs' motion to enforce the settlement agreement, finding defendants had "failed to comply with their obligations under the settlement, and an enforcement order [was] appropriate." However, the court found that plaintiffs' request to enter judgment as part of the motion to enforce the

---

[4] Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6, subd. (a).) The parties stipulated in the settlement agreement that the court would retain jurisdiction until the request for dismissal had been filed and the settlement agreement had been fully performed.

7

settlement was premature, citing California Rules of Court, rule 3.769(h).[5] The trial court then ordered the parties to meet and confer regarding a schedule of ordered events leading to the final approval hearing.

On May 15, 2018, plaintiffs filed a motion to enforce the settlement agreement and enter judgment against defendants pursuant to section 664.6, based on (1) defendants' misrepresentation that they had set aside funds to pay the settlement, and (2) defendants' refusal to pay the claims administrator the fee to mail out the notice, claim form, and other court-approved materials as required by the settlement agreement.[6] The trial court deferred a ruling on plaintiffs' motion pending its final approval hearing. The parties were ordered to meet and confer regarding payment to the administrator and to submit proposed deadlines for producing the class list to the administrator and class counsel.

On September 18, 2018, plaintiffs filed a motion to modify the order granting preliminary approval of the settlement agreement based on defendants' failure to provide a class list and pay the claims administrator, and their alleged misrepresentations that they had funds to pay the settlement. Plaintiffs asked the court to substitute class counsel as the settlement administrator in the place of Settlement Services, Inc., the agreed-upon administrator. In opposition, defendants contended that the trial court did not have the authority to rewrite the settlement agreement to

---

[5] California Rules of Court, rule 8.769(h) provides, in pertinent part: "If the court approves the settlement agreement after the final approval hearing, the court must make and enter judgment."

[6] The settlement agreement obligates the Settling Defendant to "pay all costs of administering the Settlement up to a maximum of seventy-five thousand dollars ($75,000)."

change the administrator and that appointing class counsel as the administrator would create a conflict of interest.

On January 8, 2019, the trial court granted plaintiffs' motion.[7] In a written ruling, the court stated, "Given the events that have transpired in this litigation since the Court entered preliminary approval over three years ago, it is appropriate for the Court, in the interests of fulfilling its fiduciary obligation, to permit modification of the settlement agreement to provide Plaintiffs as the settlement administrators." The court further stated that the substitution of class counsel for Settlement Services, Inc. as the settlement administrator "would not affect a *material* term of the settlement." The court explained that a settlement administrator, "while having an important role in class settlements generally, fulfills what is essentially a ministerial (and limited) duty." The court further found no conflict of interest would arise from class counsel serving in this dual role.

The court substituted class counsel as the settlement administrator, and based on defendants' representation of an inability to pay, ordered plaintiffs to pay the costs of serving the class notice and claim forms (with the right to claim such costs following final judgment). The court noted that requiring defendants to serve notice would "frustrate efforts in moving the case towards final approval." In addition, class counsel was ordered to include a statement in a modified class notice that it was fulfilling dual roles as class counsel and claims administrator. The court then set forth a calendar of events necessary to effectuate final approval of the settlement agreement.

---

[7] The hearing on the motion was held on November 14, 2018, with no court reporter present.

On October 23, 2019, plaintiffs' counsel represented to the trial court that it had received the class list and on November 12, 2019, provided notice to the class. The class notice described the settlement terms and included the proposed attorney fee award for class counsel, a schedule for final approval, and the procedure for making objections. The final approval hearing was set for March 24, 2020. The notice stated that class counsel "may receive up to $652,000 for their attorneys' fees and reimbursement of costs. Payment of attorneys' fees [and] costs . . . are paid in addition to and will not affect the benefits provided to the Class." Class counsel's dual role as settlement administrator was disclosed. Written objections were due no later than February 20, 2020.

Defendants filed objections to the class action settlement contending (1) the settlement agreement was unfair, unreasonable, and inadequate because class members would receive nothing from defendants who could not fund the settlement; (2) the $600,000 award of attorney fees was unconscionable because plaintiffs' counsel had recovered nothing for the class members; and (3) the class notice of the settlement was misleading because it misrepresented that defendants were solvent.

On March 6, 2020, plaintiffs filed a motion for final approval of the settlement agreement, attorney fees and costs, administration costs, and incentive payments to the class representatives. Despite the class notice listing March 24, 2020, as the date for the final approval hearing, the trial court subsequently continued the hearing to April 23, 2020, and then to July 21, 2020, due to the COVID-19 pandemic.[8]

---

[8] Defendants filed memoranda purporting to "forward" class members Brian Oxman's and Yuri Guzman's objections to the class action settlement and attorney fee request. Defendants explained that Oxman and Guzman were prevented from filing their objections directly with the trial court, as the

10

At the July 21, 2020 hearing, objectors Oxman and Guzman were heard and counsel argued the motion for final approval.[9]  On August 17, 2020, the trial court granted final approval of the settlement agreement, determining that the settlement was fair and reasonable and benefitted the class.  The court awarded plaintiffs $600,000 in attorney fees, $52,000 in costs, and $75,000 in administration costs.  Furthermore, the court awarded $9,000 in incentive payments, with $1,000 going to each of the nine class representatives.  All objections were overruled.  Plaintiffs were ordered to prepare and lodge a proposed judgment.[10]

III.    *Judgment and Petition to Compel Arbitration*

On September 21, 2020, plaintiffs filed a motion for entry of judgment requesting the trial court enter judgment against *all* 15 named defendants, jointly and severally, based on (1) defendants' breaches of the settlement

class notice specified they do, due to a prohibitive $1,435 filing fee.  These memoranda collectively asserted that (1) the class notice requiring an objection to be filed with the trial court violated the settlement agreement; (2) the class notice misrepresented the facts of the settlement; (3) class counsel had not set up a website in English and Spanish where class members could opt out, as required by the settlement agreement; (4) class counsel failed to send out the 15-day follow-up class notice required by the agreement; (5) class members failed to receive notice of the final approval hearing date, as it was twice continued; (6) any new notice would confuse and mislead potential class members; and (7) the class notice was "false" in that it suggested defendants had the ability to pay out claims, when they did not.

[9]     No court reporter was present for the July 21, 2020 hearing.

[10]    Defendants appealed from the order granting final approval, but we dismissed the appeal because it was from a non-appealable interlocutory order.

11

agreement; (2) defendants' fraud perpetrated on the court through the misuse of a client trust account, which was intended to fund the settlement; (3) the repeated representations to the court that Top Surgeons and Surgery Center Management had no money to fund the settlement; and (4) Top Surgeons' and Surgery Center Management's status as the alter egos of the other defendants.

On October 9, 2020, defendants Surgery Center Management, Top Surgeons, and Michael and Cindy Omidi filed a petition to compel arbitration pursuant to the settlement agreement.[11] In the petition, defendants contended that plaintiffs' request to enter judgment against all 15 defendants was subject to the arbitration clause in the settlement agreement, because entering judgment against all defendants would materially alter the agreement between the parties. Defendant Julian Omidi joined in the petition to compel arbitration.

On October 23, 2020, the trial court found that on "the face of the settlement, and from a purely procedural standpoint, judgment may only be entered at this time as to Top Surgeons, LLC and Surgery Center Management, LLC as, respectively, the Settling Defendant and the Guarantying Defendant (i.e., in conformance with the terms of the settlement)." The court therefore took plaintiffs' motion for entry of judgment against all defendants off-calendar and entered judgment against Top Surgeons and Surgery Center Management only. The court then treated the

---

[11] On the same day, these defendants filed a demand for arbitration, which was nearly identical to their petition to compel arbitration. Aside from mentioning both filings, defendants do not distinguish between the demand for arbitration and petition to compel arbitration. For ease of reference, we will treat both filings as one petition to compel arbitration (as it appears the trial court did as well).

motion for entry of judgment as a motion to amend the judgment to *add* all other defendants as judgment debtors, ordered plaintiffs to serve the amended motion on defendants, and invited defendants to supplement their oppositions. The court took the petition to compel arbitration off-calendar as moot.

That same day, the trial court signed the judgment prepared by plaintiffs. The names of all defendants except Top Surgeons and Surgery Center Management were blacked out in the caption. However, paragraph 7 of the judgment listed all 15 named defendants and directed them, "jointly and severally, to pay the settlement sum of $1,363,000" within 15 days to the claim administrator. The administrator would in turn distribute all funds to the class members, attorneys, and the class representatives within 30 calendar days after receipt of the settlement funds. The judgment ordered the release of any claims against defendants "[u]pon satisfaction of all payments and obligations under the Settlement Agreement and under this Order."

Defendants filed a notice of appeal from the October 23, 2020 judgment and the "order denying [the] petition to compel arbitration."

IV. *Corrected Judgment*

While the appeal was pending, on March 19, 2021, this court directed the trial court to consider whether to exercise its authority under section 473, subdivision (d),[12] to correct the October 23, 2020 judgment nunc pro tunc by striking the names of the defendants against whom it did not intend to enter

---

[12] Section 473, subdivision (d) provides, "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed[.]"

13

judgment, and thereby conform the judgment to its intent as set forth in its October 23, 2020 minute order.

On March 30, 2021, the trial court issued an order stating that "its intent, consistent with its October 23, 2020 minute order, was to enter judgment against Defendants Top Surgeons, LLC and Surgery Center Management, LLC only." Moreover, the trial court "intended to treat the Plaintiffs' motion for entry of judgment as a motion to amend the judgment to add all other Defendants. Given the Defendants' October 29, 2020 appeal of the judgment, the [trial] court did not rule on the motion to amend the judgment." Therefore, the trial court, on its own motion, corrected its clerical mistake in the October 23, 2020 judgment to conform to the minute order. The court ordered "Top Surgeons, LLC and Surgery Center Management, LLC, jointly and severally, to pay the settlement sum of $1,363,000 within fifteen (15) days." On April 22, 2021, the day this court lifted the stay on the appeal, defendants filed a notice of appeal from the March 30, 2021 order correcting the October 23, 2020 judgment.

We granted defendants' motion to consolidate the two appeals, and subsequently invited briefing from the parties on standing, waiver, forfeiture, and nonappealability issues. On November 23, 2022, the parties submitted their respective letter briefs.

At oral argument on January 12, 2023, plaintiffs' counsel informed this court that Top Surgeons' corporate charter had been suspended by the California Secretary of State on August 2, 2021, after the filing of Top Surgeons' notice of appeal but prior to the filing of its opening brief. Plaintiffs' counsel argued a corporation must be in good standing to defend and participate in an appeal. (See *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1215.) On January 17,

14

2023, plaintiffs filed a request for judicial notice of a copy of the Certificate of Status from the Secretary of State for Top Surgeons, evidencing that its corporate status was suspended by the California Franchise Tax Board. On January 25, 2023, Top Surgeons filed a motion for a 30-day continuance to effect revivor of its corporate charter, which this court granted on January 31, 2023. On March 2, 2023, Top Surgeons filed a copy of the Certificate of Revivor evidencing Top Surgeons "was relieved of suspension or forfeiture and is now in good standing with the Franchise Tax Board." Because Top Surgeons is now a corporation in good standing, it may participate and defend in this action. (*Ibid.*)

## DISCUSSION[13]

### I.   *Appealability and Standing*

As demonstrated by even our abbreviated recitation of the procedural history, the trial court proceedings were convoluted and remained so even after the court "enter[ed] final judgment in this case in accordance with the terms of the Settlement Agreement" on October 23, 2020. To summarize, in its October 23, 2020 minute order, the trial court stated it was entering judgment against Top Surgeons and Surgery Center Management only. It noted that the settlement agreement defined the "Settling Defendant" as Top

---

[13] Plaintiffs contend the lack of reporter's transcripts is fatal to the appeal. We disagree. Plaintiffs fail to identify any statement made by the trial court, argument made by counsel, or additional evidence introduced at any hearing that would be necessary for meaningful review. (See *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933 [no reporter's transcript required because respondent did not "identify any particular matter addressed at the hearing that [the] court must consider to decide the appeal"].)

Surgeons and the "Guarantying Defendant" as Surgery Center Management, with all the other defendants falling into the category of "Dismissed Defendants." However, the actual October 23, 2020 judgment entered by the trial court mistakenly included all the named defendants as being jointly and severally liable for the damages. The court corrected the clerical error on March 30, 2021. Only Top Surgeons and Surgery Center Management are subject to the corrected judgment and ordered to "jointly and severally . . . pay the settlement sum of $1,363,000 within fifteen (15) days." The judgment, as corrected, does not purport to impose any liability on defendants other than Top Surgeons and Surgery Center Management.

A. *Appealability*

1. *The Judgment is Appealable*

The question arises whether the judgment[14] is appealable despite the fact that the "Dismissed Defendants" currently remain as parties to the action, with Plaintiffs' motion to amend the judgment to add them as judgment debtors still pending before the trial court. "The existence of an appealable judgment is a jurisdictional prerequisite to an appeal." (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292 (*Doran*).) Subject to some exceptions, "if further judicial action is required for a final determination of the rights of the parties, the decree is interlocutory [and] will not be appealable." (*Id.* at p. 1293.)

*Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200 (*Viejo*), is instructive. In *Viejo*, as here, the defendant appealed from a judgment

---

[14] We refer to both the October 23, 2020 judgment and March 30, 2021 nunc pro tunc order clarifying the judgment as the "judgment." For purposes of the issues raised on appeal, the parties do not distinguish between the two.

purporting to enforce a settlement agreement pursuant to section 664.6. (217 Cal.App.3d at p. 203.) The appellate court considered the issue whether "the judgment, which was entered in the still pending new action, is appealable even though it does not finally conclude the new action." (*Id.* at p. 205.) The court held that it was appealable, where the trial court intended to effect a final judgment, even if collateral matters remained to be addressed. (*Viejo*, at p. 205; see § 904.1, subd. (a).)

Here, the court clearly intended to enforce the settlement agreement, stating it was "enter[ing] final judgment in this case in accordance with the terms of the Settlement Agreement." Under that agreement, only Top Surgeons and Surgery Center Management bore liability and the remaining defendants were "Dismissed Defendants" who were to be dismissed from the suit. Because the judgment was intended to resolve the case as to all parties, it was appealable.

The fact that plaintiffs filed a motion to amend the judgment to add the Dismissed Defendants as judgment debtors did not affect the appealability of the underlying judgment. Any post-judgment order by the trial court on plaintiffs' motion to amend the judgment to add judgment debtors would be separately appealable under section 904.1, subdivision (b). (*Viejo*, *supra*, 217 Cal.App.3d at p. 205; see *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1071 [postjudgment order denying motion to amend the judgment to add judgment debtor as an alter ego is an order separately appealable from the original judgment].)

### 2. *Defendants May Appeal from the Order Substituting Plaintiffs' Counsel as Claims Administrator*

Plaintiffs challenge the appealability of the trial court's determination, as part of its January 8, 2019 order granting plaintiffs' motion to modify the order granting preliminary approval, that plaintiffs' counsel would be substituted as claims administrator. Plaintiffs contend this order was not identified in the notice of appeal from the October 23, 2020 judgment, and in any event, any appeal of the order is untimely.

We liberally construe the notice of appeal as including the order substituting class counsel as the settlement administrator. That order was a nonappealable interlocutory order, and therefore defendants could only challenge it upon judgment being entered. (*Doran, supra*, 76 Cal.App.4th at pp. 1292–1293 ["'interlocutory or interim orders are not appealable, but are only "reviewable on appeal" from the final judgment'"]; *Viejo, supra*, 217 Cal.App.3d at p. 205; see Cal. Rules of Court, rule 8.100(a)(2).) Plaintiffs fail to cite any legal authority to the contrary. We therefore address in section II.D below the merits of the argument as to the substitution of the claims administrator.

### 3. *The Order Taking the Petition to Compel Arbitration Off-Calendar as Moot is not Appealable*

Defendants Michael, Cindy and Julian Omidi contend that the trial court committed reversible error by denying their petition to compel arbitration. Their request for arbitration centered on plaintiffs' request to enter judgment against all 15 named defendants, which defendants contended would materially alter the agreement between the parties. However, the trial court did not *deny* the petition to compel arbitration; it

18

placed it off calendar as moot since it was entering judgment only against Top Surgeons and Surgery Center Management.

A postjudgment order placing a motion off calendar is not appealable. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651–652 [to be appealable, a postjudgment order "'must either affect the judgment or relate to it by enforcing it or staying its execution'"]; *M. G. Chamberlain & Co. v. Simpson* (1959) 173 Cal.App.2d 263, 281 & fn. 1 [concluding order made after entry of judgment and placing motion off calendar is nonappealable]; see also *Barnes v. Litton Systems, Inc.* (1994) 28 Cal.App.4th 681, 685 ["an essential element of an appealable postjudgment order is one which is not preliminary to later proceedings"]; *R & A Vending Services, Inc. v. City of Los Angeles* (1985) 172 Cal.App.3d 1188, 1193–1194 [off calendar "'is not synonymous with "dismissal"'" and "'merely means a postponement'"].)

Defendants rely on *American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, in which the court deemed an order taking a motion for leave to file an amended complaint off calendar to be a denial of the motion. (*Id.* at p. 877, fn. 1.) However, the order in that case was "in effect a final determination of plaintiff's rights." (*Ibid.*) The order before us simply cannot be deemed a final determination. Rather, the court took the petition to compel arbitration off calendar as moot because it was filed solely in response to plaintiffs' motion to enforce the judgment against all the defendants, which was taken off-calendar. Thus, there was no final determination of defendants' rights. We therefore lack jurisdiction to entertain the merits of this nonappealable order. (See *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21 ["a reviewing court lacks jurisdiction on direct appeal in the absence of an

19

appealable order or judgment"]; accord, *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)[15]

B. *Standing*

1. *Only Top Surgeons and Surgery Center Management Have Standing to Appeal from the Judgment*

Plaintiffs contend Top Surgeons and Surgery Center Management are the only two defendants who have standing to challenge the judgment. We agree.

The rule of appellate standing is codified in section 902, which provides, "[a]ny party aggrieved" may appeal a judgment. (See *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 263; accord, *Eck v. City of Los Angeles* (2019) 41 Cal.App.5th 141, 145.) A party is aggrieved if its "rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 (*Carleson*); accord *In re K.C.* (2011) 52 Cal.4th 231, 236.) The injury ""must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."" (*Carleson, supra,* at p. 737.) The standing requirement is jurisdictional. (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.)

As noted above, while the original October 23, 2020 judgment entered by the trial court appeared to include all 15 named defendants as jointly and severally liable judgment debtors, the March 30, 2021 order corrected this clerical error. In the final, corrected judgment, only Top Surgeons and Surgery Center Management are subject to the order to "jointly and severally

---

[15] Top Surgeons' request for judicial notice of the patient arbitration agreements contained in the record of a related appeal (*Faitro v. Top Surgeons, Inc.* (Mar. 14, 2017, B241353) [nonpub. opn.]) is denied.

. . . pay the settlement sum of $1,363,000 within fifteen (15) days." The judgment, as corrected, does not purport to affect the rights of any defendants besides Top Surgeons and Surgery Center Management. Therefore, only Top Surgeons and Surgery Center Management have standing to appeal from that judgment, and we do not consider the claims of the remaining defendants purportedly arising out of the judgment.

2. *Top Surgeons and Surgery Center Management Lack Standing to Raise Issues on Behalf of Class Members*

Although Top Surgeons and Surgery Center Management are proper parties to the appeal, they may only raise issues that have directly affected them and caused them injury. (*Carleson*, *supra*, 5 Cal.3d at p. 737.) They lack standing to raise any issues on behalf of others. (See *Six4Three, LLC v. Facebook, Inc.* (2020) 49 Cal.App.5th 109, 115 ["'a would-be appellant "lacks standing to raise issues affecting another person's interests"'"]; *In re K.C., supra*, 52 Cal.4th at p. 236.) Most of their claims on appeal concern alleged breaches of the settlement agreement that would affect only *class members*, not defendants. Falling within this category are their contentions that (1) the settlement administrator failed, in violation of the settlement agreement, to set up a Spanish and English website where class members could submit claims forms if they chose not to do so by mail; (2) the settlement administrator failed to serve 15-day follow-up notices to class members after sending the original notice; (3) the class notice was deficient in that it required class members to file an objection with the trial court, thereby incurring a $1,435 filing fee; (4) the class notice misrepresented that Top

21

Surgeons would be able to fund the settlement;[16] (5) the requirement that unnamed class members file objections to the proposed settlement and request for attorney fees before class counsel had filed their motion for final approval was a violation of due process; and (6) the failure to provide unnamed class members with notice of the continuance of the final approval hearing also violated their due process rights. Top Surgeons and Surgery Center Management fail to allege how they, as opposed to the class members, were injured by any of these purported violations.[17] Thus, defendants have no standing to raise those arguments on appeal.

---

[16] Even if they had standing to make these arguments, any alleged deficiencies in the class notice were not raised in the trial court and are therefore forfeited on appeal. In filing the motion for preliminary approval of the class action settlement, plaintiffs included the class notice for approval. Defendants did not file an objection raising any error with the notice prior to the trial court granting the motion. Accordingly, defendants forfeited this argument on appeal, and we decline to review it. (See *Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 92.) Even if defendants made these objections at the preliminary approval hearing, defendants provide us with no reporter's transcript or suitable substitute that would document the proceedings. (Cal. Rules of Court, rules 8.130, 8.134, 8.137.)

[17] Defendants contend they have standing to assert claims on behalf of unnamed class members because "[e]ach [c]lass [m]ember is a patient of [d]efendants, and the relationship between them is a fiduciary relationship of a physician or health care provider and patient." This contention is preposterous given that defendants and the unnamed class members (along with the class representatives) are on opposite sides of this adversarial proceeding.

We note that in the context of class actions, unnamed class members are not "parties" pursuant to section 902. (*Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199, 201 (*Eggert*).) Therefore, unnamed class members "may not appeal a class judgment, settlement, or attorney fees award unless they intervene in the action." (*Hernandez v. Restoration Hardware, Inc., supra*, 4 Cal.5th at p. 263.) A class member who wishes to challenge a judgment pursuant to settlement on appeal must have become a party of record in the

II.    *Defendants' Contentions that the Trial Court "Rewrote" the Settlement Agreement in its Judgment*

   A.    *Relevant Legal Standards*

"If the court approves the settlement agreement after the final approval hearing, the court must make and enter judgment." (Cal. Rules of Court, rule 3.769(h).) The trial court's power to enter judgment after approval of a class action settlement derives from section 664.6, which provides that where the parties so stipulate, the trial court may enter judgment pursuant to the terms of a settlement. (§ 664.6; *Reed v. United Teachers Los Angeles* (2012) 208 Cal.App.4th 322, 341–342.) Section 664.6 affords a trial court the authority to streamline the process for enforcing a settlement agreement without the need for a new lawsuit. (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1175–1176 (*Hernandez*).) A judgment entered pursuant to section 664.6 should reflect all the material terms of settlement so as not to "defeat the purposes of the settlement and spawn further litigation." (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1185.)

The court "may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*).) The trial court may not "create the *material* terms of a settlement, as opposed to deciding what terms the parties themselves have previously agreed upon." (*Ibid.*, italics added and omitted; *Machado v. Myers* (2019) 39 Cal.App.5th 779, 790; *Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732; *Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360;

---

trial court, either by formally intervening in the class action or by filing a motion to vacate the judgment. (*Eggert,* at p. 201.) Here, no unnamed class member became a party of record in the trial court.

*Hernandez, supra,* 126 Cal.App.4th at p. 1176 ["[t]he court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement"].) A material term is one that is not a "minor, immaterial or separatable issue." (*Weddington,* at p. 815.)

"A trial court's factual findings on a motion to enforce a settlement pursuant to section 664.6 are subject to limited appellate review and will not be disturbed if supported by substantial evidence." (*Machado v. Myers, supra,* 39 Cal.App.5th at pp. 790–791; *Weddington, supra,* 60 Cal.App.4th at p. 815.) However, legal questions, including whether the granting of a motion satisfied the requirements of section 664.6, are reviewed de novo. (*Machado v. Myers,* at p. 791; *Weddington,* at p. 815.) We review de novo whether the trial court's judgment altered material terms of the settlement agreement.

B.  *The Judgment Altered the Payment Obligations and Payment Timetable Agreed to by the Parties*

Top Surgeons and Surgery Center Management correctly contend the trial court changed material terms of the settlement agreement in the judgment by (1) holding Surgery Center Management jointly and severally liable instead of as a guarantor, and (2) altering the timeline for the settlement payment.

"Whenever an appellate court may make a final determination of the rights of the parties from the record on appeal, it may, in order to avoid subjecting the parties to any further delay or expense, modify the judgment and affirm it, rather than remand for a new determination. [Citations.]' [Citation.]" (*AB Cellular LA, LLC v. City of Los Angeles* (2007) 150

24

Cal.App.4th 747, 767; see § 906 ["Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision . . . and may affirm, reverse *or modify any judgment or order appealed from and may direct the proper judgment or order to be entered*" (italics added)]; see e.g., *Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1150 [modifying judgment and affirming it as modified "[i]n the interest of judicial economy" and to avoid "further delay in this matter" and "another appeal"].)  As discussed below, we modify the judgment in several respects to conform to the parties' agreement.

Surgery Center Management contends the trial court impermissibly altered its financial obligation under the settlement agreement in paragraph 7 of the judgment by ordering that Top Surgeons and Surgery Center Management be jointly and severally liable for the settlement payment. Under the settlement agreement, as the "Guarantying Defendant," Surgery Center Management is only obligated to assume financial responsibility if it receives notice that Top Surgeons as the "Settling Defendant" "cannot or does not transfer payment of the Settlement Funds as set forth in [the] Settlement Agreement."  However, paragraph 7 of the judgment, as corrected nunc pro tunc by the trial court, orders "Top Surgeons, LLC and Surgery Center Management, LLC, *jointly and severally*, to pay the settlement sum of $1,363,000 within fifteen (15) days."  (Italics added.)  We agree with Surgery Center Management that the change was material.

Top Surgeons and Surgery Center Management also contend the trial court shortened the deadline for payment of the settlement funds.  The settlement agreement provides for the payment to be made once the settlement was "final," which term is defined to mean after the resolution of a timely filed appeal resulting in the "final judicial approval of the Settlement."

25

The judgment, however, orders payment to be made "within fifteen (15) days of entry of this Order." We also deem this difference to be material.

We thus modify the judgment to make the financial obligations and payment deadlines consistent with those agreed to by the parties. Paragraph 7 of the judgment is modified to state as follows: "The Court directs defendant Top Surgeons to pay to the settlement administrator, Robertson & Associates, LLP the settlement sum of $1,336,000 within 15 days of the remittitur issuing in the appeal No. B307742. If Top Surgeons fails to timely make such payment, within seven calendar days of receiving notice of such non-payment, Surgery Center Management will be responsible for such payment." In so modifying the judgment, we correct an obvious clerical error in paragraph 7 of the judgment that listed a total judgment amount of $1,363,000 instead of the correct total of $1,336,000.[18] (See *Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 62–63 [correcting on appeal a clerical error as to judgment amount].)

C. *The Judgment Did Not Materially Alter the Parties' Agreed Terms Regarding Dismissal and Releases*

Surgery Center Management contends that in its judgment, the trial court should have dismissed it as a defendant, notwithstanding its obligation as a Guarantying Defendant. Surgery Center Management correctly points out that the settlement agreement lists it among the "Dismissed Defendants" that include the remaining defendants other than Top Surgeons. The settlement agreement states, "It is affirmed and acknowledged that the

---

[18] The individual components of the total monetary judgment set forth in subparagraphs (a) through (f) of paragraph 7 of the judgment total $1,336,000.

26

Dismissed Defendants make no monetary contribution or payment toward settlement and are not apportioned any fault in connection with the Claims and causes of action and are hereby dismissed for waivers of costs, attorneys' fees and claims for malicious prosecution." As plaintiffs contend, however, it would be absurd to dismiss Surgery Center Management as a defendant when it has not yet fulfilled obligations it may have as the Guarantying Defendant. As the sole Guarantying Defendant, it is financially responsible to pay the settlement amount if Top Surgeons does not timely satisfy the obligation. Yet under the settlement agreement, "Dismissed Defendants *make no monetary contribution or payment toward settlement*." Those two provisions cannot be reconciled if Surgery Center Management was intentionally included among the Dismissed Defendants. It is quite apparent that Surgery Center Management's inclusion in the long list of Dismissed Defendants was inadvertent and erroneous. (See *McNeil v. Graner* (1949) 91 Cal.App.2d 858, 863 ["'Where it is clear that a word or term has been used inadvertently, and it is clearly inconsistent with, and repugnant to, the meaning of the parties, it will be rejected altogether'"].) Rather, the parties plainly intended for Surgery Center Management to remain a party to the case pending its performance of its potential payment obligations under the agreement. Accordingly, we find no error in the judgment's failure to dismiss Surgery Center Management.

Top Surgeons and Surgery Center Management also contend the judgment materially altered the timing of the release of claims against them. The settlement agreement provides for such a release when the settlement becomes final (defined to mean after the appellate process has completed). On the other hand, the judgment provides for a release of claims "[u]pon satisfaction of all payments and obligations under the Settlement Agreement

27

and under this Order." We conclude the difference is not material. Once the appellate process is final, Top Surgeons (and then potentially Surgery Center Management) is obligated to make the agreed-to settlement payment. It would be nonsensical to release either defendant prior to their performance of the main obligations under the settlement agreement, and the parties did not set forth in the agreement any intention to release Top Surgeons and Surgery Center Management from any claims or liability prior to their fulfilling their obligations.

D.    *The Substitution of Class Counsel as Settlement Administrator Was Not a Material Change*

Top Surgeons and Surgery Center Management argue that the trial court improperly rewrote the settlement agreement by substituting plaintiffs' counsel for Settlement Services, Inc., as claims administrator. The agreement provided: "Settling Defendant will select the Settlement Administrator, subject to the reasonable approval of Plaintiffs' Counsel. The parties have agreed to the appointment of Settlement Services, Inc., an experienced administrator, to administer the claims process." Under the agreement, defendants were required to provide a class list to Settlement Services, Inc. and to pay the administrator. For more than four years, defendants failed to meet these obligations. Plaintiffs finally filed a motion to modify the order granting preliminary approval of the settlement agreement in which they requested, in part, that the trial court substitute class counsel as the settlement administrator. In granting the motion, the court noted its fiduciary duty to effectuate the settlement agreement. The court found that the substitution of plaintiffs' counsel for Settlement Services, Inc. as the settlement administrator "would not affect a *material* term of the settlement"

28

given that the administrator "fulfills what is essentially a ministerial (and limited) duty." The court further found no conflict of interest if class counsel also served as the administrator. Top Surgeons and Surgery Center Management challenge the court's authority to modify this term of the settlement agreement.

Top Surgeons and Surgery Center Management cite *In re Black Farmers Discrimination Litigation* (D.D.C. 2013) 950 F.Supp.2d 196 for the proposition that trial courts cannot change the agreed upon settlement administrator. The case stands for no such thing. Rather, the district court merely held that the plaintiffs in that class action failed to meet their burden to show "'a significant change either in factual conditions or in law'" that warranted revision of the settlement administrator's review process for claims. (*Id.* at p. 200.)

Top Surgeons and Surgery Center Management also argue the settlement administrator must be a neutral party, relying on *Sample v. Centurylink Communications, LLC* (*Sample*), an unreported federal district court case from Arizona, in which the court found "unreviewability" provisions allowing settlement administrators ultimate authority to determine which claims are valid "have consistently been enforced so long as the claims administrator is neutral and independent." (2018 WL 3997484, at p. *5.) This case is not on point. Unlike in *Sample*, there is no provision in the settlement agreement providing for any type of claims review process by the settlement administrator, let alone one that prohibits a claimant from seeking appellate review, thereby requiring a "neutral and independent" administrator. Top Surgeons and Surgery Center Management fail to cite any authority, and we are aware of none, requiring that a settlement

29

administrator be a neutral party or prohibiting class counsel from fulfilling this role.

Further, Top Surgeons and Surgery Center Management make no effort to demonstrate that the identity of the class administrator was a material term here, or that this modification affected any of the material terms of the settlement agreement. They do not contest that the administrator fulfills only a ministerial duty. They fail to make any argument that substituting class counsel as the settlement administrator was prejudicial to them in any way. (See Cal. Const., art. VI, § 13; *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 ["we cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice"].) We conclude the trial court did not err in making this minor modification to the settlement agreement necessitated by defendants' dilatory conduct.[19]

III.  *Attorney Fees*

Top Surgeons and Surgery Center Management contend the attorney fee award of $600,000 as provided for in the settlement agreement was unreasonable. We disagree.

The settlement agreement included a "clear sailing" provision, which is typical in class action settlements. (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 553 (*Consumer Privacy*).) Class counsel agreed to petition

---

[19]  At oral argument, defendants argued that the trial court failed to define the settlement class in the judgment as required by Civil Code section 1781, subdivision (g) and California Rules of Court, rule 3.771. This issue is forfeited on appeal as it was raised for the first time in defendants' reply briefs. (See *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.)

30

for an attorney fee award that would not exceed a fixed amount (here, $600,000), and the defendants agreed not to oppose the fee petition. A clear sailing provision allows the parties to establish the outer limits of a defendant's liability for fees, with the defendant agreeing not to oppose a fee application within a defined range, "without conceding the propriety of any particular amount." (*Consumer Privacy,* at p. 559; see 4 Newberg and Rubenstein on Class Actions, Class Actions in State Courts, Preliminary Approval (6th ed. 2022) § 13:9.) While the propriety of clear sailing agreements has been debated, "'[t]o the extent it facilitates completion of settlements, this practice should not be discouraged.'" (*Id*. at p. 553, quoting 4 Newberg et al., on Class Actions, *supra*, § 15:34, p. 112, fn. omitted.)

Given that defendants explicitly agreed in the settlement agreement not to challenge any attorney fee award up to $600,000, it appears they expressly waived any claim that the $600,000 fee award was excessive. Even if they did not waive the claim, it fails on the merits.

In challenging the reasonableness of the attorney fee award, Top Surgeons and Surgery Center Management argue that the trial court failed to apply a "heightened scrutiny" as outlined by the Ninth Circuit in *In re Bluetooth Headset Products Liability* (9th Cir. 2011) 654 F.3d 935 (*Bluetooth*). The Ninth Circuit held that trial courts have a heightened duty to examine clear sailing provisions carefully and to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested. [Citation.]" (*Bluetooth, supra*, 654 F.3d at p. 948.) The approval of the settlement must be "supported by a clear explanation of why the disproportionate fee is justified and does not betray the class's interests." (*Id*. at p. 949.)

31

No published California decision has held that trial courts must apply the heightened scrutiny standard articulated by the Ninth Circuit. However, it is certainly the case that "[b]ecause of the potential for fraud, collusion or unfairness, thorough judicial review of fee applications is required in all class action settlements and the fairness of the fees must be assessed independently of determining the fairness of the substantive settlement terms." (*Consumer Privacy, supra*, 175 Cal.App.4th at p. 555.) "A court must . . . determine the reasonableness of the fee . . . whether or not there is an objection presented from the class." (*Id.* at p. 559; see *Garabedian v. Los Angeles Cellular Telephone Co.* (2004) 118 Cal.App.4th 123, 125 [court retains obligation to award only attorney fees that are reasonable despite agreement of parties that defendant would pay a maximum of $14,125,000].)

We review an attorney fee award in a class action settlement under an abuse of discretion standard. (*Consumer Privacy, supra*, 175 Cal.App.4th at p. 556.) "[T]he "'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" [Citations.]" (*Ibid.*)

Here, in its written ruling, the trial court noted its obligation to carefully examine the fees requested given the existence of the clear sailing provision, and it found no evidence that the parties "colluded in negotiating" the provision. The court expressly found that the fee award was reasonable under the circumstances. When the court made its determination, it had reviewed declarations from plaintiffs' counsel attesting to their hourly rates and time spent working on the case. The court acknowledged that the attorney fee award was "on the high side," but found the amount of fees sought was tied to counsel's actual work and efforts to benefit the class. The

court also stated that class members who filed claims could each receive over $900 each under the settlement agreement, which was a significant amount in light of the nature of the claims alleged in the case. Because the lodestar amount ($1,845,465) far exceeded the attorney fees bargained for in the settlement agreement, the court applied a negative multiplier thereby reducing the attorney fee award to the $600,000 agreed-upon sum. Therefore, we conclude that the trial court was acutely aware of its responsibility in assessing the attorney fee request and properly exercised its discretion in its award.[20]

//

//

//

//

//

//

//

//

//

//

---

[20] Top Surgeons and Surgery Center Management also contend the attorney fee award was unreasonable because they had no funds to pay for the settlement and therefore class counsel recovered nothing for class members. They are putting the proverbial cart before the horse. In ruling on the motion for final approval, the trial court decides solely whether the settlement agreement, including the attorney fees, is fair and reasonable under the circumstances. Despite these defendants' claim they lacked funds (without proper documentation and any finding by the trial court), their ability to pay along with the means by which plaintiffs may ultimately recover the funds owed under the class settlement were not before the court.

## DISPOSITION

Paragraph 7 of the judgment filed October 23, 2020 is modified as set forth in section II.B of this opinion. As so modified, the judgment is affirmed. The trial court shall retain jurisdiction pursuant to section 664.6. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STONE, J.*

We concur:

COLLINS, Acting P. J.

CURREY, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.